AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court
### for the
### Western District of New York

| | |
|---|---|
| United States of America<br>v.<br>**JONATHAN ROBERTS**<br>*Defendant* | Case No. 19-MJ-594 |



## CRIMINAL COMPLAINT

I, EDWARD J. WILLIAMS, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about April 30, 2019, in the County of Ontario, in the Western District of New York, the defendant violated offenses described as follows:

knowingly and unlawfully possessing a machinegun, in violation of Title 18, United States Code, Section 922(o); and knowingly and unlawfully possessing an unregistered NFA firearm, in violation of Title 26, United States Code, Section 5861(d).

SEE ATTACHED AFFIDAVIT OF SPECIAL AGENT EDWARD J. WILLIAMS.

This Criminal Complaint is based on these facts:

☒ Continued on the attached sheet.

*Complainant's signature*

S/A EDWARD J. WILLIAMS, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: May 2, 2019

*Judge's signature*

HONORABLE JONATHAN W. FELDMAN
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

City and State: Rochester, New York

19 MJ 594

# AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

STATE OF NEW YORK     )
COUNTY OF ERIE        )   SS:
CITY OF BUFFALO       )

EDWARD J. WILLIAMS being duly sworn, deposes and states:

1.  Your affiant is a special agent with Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) and has been so employed since 2009. As a requirement for employment as an HSI special agent, your affiant successfully completed Criminal Investigator Training Program (CITP) located at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. At the conclusion of CITP, your affiant also completed an additional ICE Special Agent Training (ICESAT) Academy. As part of the training at FLETC, your affiant received extensive instruction in the areas of immigration law, customs law, criminal law, firearms training, rules of evidence, and interview techniques. Your affiant's law enforcement experience includes conducting physical surveillance, interviewing witnesses, victims and suspects, writing affidavits for and executing search warrants, handling confidential informants, analyzing phone records obtained from subpoenas, search warrants, pen registers, trap and trace devices, and collecting and processing evidence.

2.  I submit this affidavit in support of an application for a criminal complaint charging JONATHAN ROBERTS (hereinafter "ROBERTS") with violating Title 18, United

1

States Code, Section 922(o) (unlawful possession of a machinegun), and Title 26, United States Code, Section 5861(d), Possession of an unregistered firearm, as defined as defined in Title 26, United States Code, Section 5845(a) of the National Firearms Act (NFA). As discussed below, there is probable cause to believe that ROBERTS did knowingly and willfully commit the Subject Offenses.

3. I am familiar with all aspects of this investigation as a result of my participation in this investigation, as well as conversations with other law enforcement officers, and review of documents and records obtained by individuals to include but not limited to HSI Special Agents, United States Postal Inspection Service (USPIS), and United States Customs and Border Protection ("CBP") officers.

4. Because this affidavit is being submitted for the limited purpose of applying for a criminal complaint, I have not included every fact known to me concerning this investigation. I have set forth only the facts I believe are necessary to establish the required foundation for the requested criminal complaint.

## RELEVANT STATUTES

5. This investigation concerns violations of Title 18, United States Code, Section 922(o) (possession of a machinegun) and Title 26, United States Code, Section 5861(d) (possession of an unregistered NFA firearm).

6. Title 18, United States Code, Section 922(o) makes it a crime for any person to possess a machinegun, which is defined as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b). The term "machinegun" also includes "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person." 26 U.S.C. § 5845(b).

7. The National Firearms Act (NFA) makes it a crime for any person to receive or possess certain firearms unless they have been registered to the person in the National Firearms Registration and Transfer Record. See 26 U.S.C. § 5861(d). These firearms include machine guns and firearm suppressors. See 26 U.S.C. § 5845(a) (defining "firearm" to include, among other things, "a machinegun" and "any silencer (as defined in section 921 of title 18, United States Code)").

## GLOCK MACHINEGUN CONVERSION DEVICES

8. Based upon your affiant's training, experience, and discussions with other federal law enforcement personnel related to the investigation of federal firearms law violations, your affiant is aware of conversion devices that have been designed and created for the sole purpose of converting semi-automatic Glock pistols into fully automatic machineguns. These devices vary by design and appearance, but all, when properly installed

3

on a semi-automatic Glock pistol, will allow the firearm to expel more than one projectile by a single pull of the trigger at a rate of approximately 1,200 rounds per minute. Installation of these conversion devices is fast and simple, requires no technical expertise, and is completed by removing the polymer slide cover plate on a Glock semi-automatic pistol and replacing it with a conversion device. Your affiant also knows that these devices are referred to by different names, including but not limited to: "switches," "auto sears," "convertors," "conversion switches," "selector switches," "conversion devices," and "Fire Selector Systems for Glock" (FSSGs). Based on these characteristics, Glock conversion devices are considered machineguns. Apart from official military and law enforcement use, Glock conversion devices may only be lawfully possessed by licensed Federal Firearms Licensees (FFLs) who have paid the appropriate Special Occupational Tax (SOT) required of those manufacturing, importing, or dealing in NFA weapons.

## PROBABLE CAUSE

9.  On April 13, 2019, CBP intercepted a United States Postal Service (USPS) mail parcel entering the United States at the JFK International Mail Facility in New York, New York. The parcel (hereinafter the "Subject Parcel") was shipped from China. The label on the Subject Parcel indicated that the package contained a "switch" that was mailed from China to Jonathan Roberts (ROBERTS) at 5425 Cramer Road, Canandaigua, New York 14424 ("Subject Premises"). Law enforcement had received information that the Subject Parcel was suspected to contain a device, also known as a selector switch, used to convert a Glock semi-automatic pistol into a full-automatic firearm or "machine gun". Pursuant to

their border search authority, CBP officers examined the parcel and found it to contain a device used to convert a Glock semi-automatic pistol to a full-automatic firearm. The device is branded with the Glock logo and an inscription that reads "Made in Austria."

10. In addition, your affiant reviewed law enforcement information pertaining to the above-mentioned Glock Conversion Devices and learned that these devices are being shipped into the United States from China via the USPS. The information contained a list of parcels that had recently been intercepted by CBP that contained these conversion devices. The Subject Parcel was on that list. Further, the lists revealed that two parcels addressed to ROBERTS at the Subject Premises were shipped from Long ZHU in China and were described as a "waist bag" and "Toys". These parcels were delivered to the Subject Premises on January 24, 2019, and February 21, 2019, respectively.

11. On April 13, 2019, CBP seized the Subject Parcel and subsequently forwarded it to the HSI Office in Buffalo, New York for an attempted controlled delivery to the individual addressed on the parcel, ROBERTS.

12. On April 29, 2019, U.S. Magistrate Judge Marian W. Payson issued am anticipatory search warrant for the Subject Premises and the Subject Parcel.

13. On April 30, 2019, law enforcement personnel from HSI, USPIS, CBP, and the New York State Police (NYSP) conducted a controlled delivery of the Subject Parcel to the Subject Premises. The Subject Parcel was accepted by ROBERTS and taken into the Subject

Premises. Shortly thereafter, law enforcement executed the federal search warrant for the Subject Premises.

14. Located inside the home on the kitchen counter was the Subject Parcel that had been opened. The conversion devices had been taken out of the parcel package and were resting on the kitchen counter. Also found in the residence were numerous firearms, including two Glock pistols for which the conversion devices were compatible, an additional conversion device for a Glock pistol, nine muzzle suppressors or "silencers" that constituted unregistered firearms, suppressor components, and a cellular telephone.

15. ROBERTS was advised of, and waived his Miranda rights. During a subsequent interview, ROBERTS stated that he had ordered the two Glock conversion devices that he received in the mail from his cell phone using an internet application (or app) named Wish. ROBERTS stated that he is a collector and ordered the devices to be installed onto Glock pistols that he owned and possessed in his home. ROBERTS stated that he ordered the devices because he thought they looked cool. ROBERTS stated that he had ordered and received another device from the Wish app prior to the two he just received, but he had thrown that away because it did not fit into his Glock pistol. When told by agents that they had found another device in a room in his house, he stated that he thought he had thrown it away. ROBERTS stated that he ordered the two additional devices because they were listed on the Wish app as auto switches that were "new for 2019", hoping that the new devices would fit onto his gun. ROBERTS stated that he didn't expect the devices to work, and although he attempted to put the devices on his gun, he just wanted to do so because he liked the way the devices looked.

16.     ROBERTS stated that he saw a video online that showed how the devices made the guns fire, and he knew that people could not own those types of devices in New York State, but he thought those types of things are cool because he is a collector. ROBERTS stated that he believed the items were legal because Customs allowed them to come into the country. ROBERTS stated that he ordered the devices to be replicas. When asked what he was going to do with the devices, ROBERTS stated that he didn't know and thought they wouldn't function but liked the way they looked on a gun.

17.     When ROBERTS was told that suppressors were found in his home, ROBERTS stated that he built the suppressors as replicas because he thought they were cool. ROBERTS stated that he made the suppressors out of flashlight tubes and saw what he called "airsoft things" on the Wish app that would make his guns look cool. When asked if the suppressors contained baffles, ROBERTS stated that there was stuff in them, but the suppressors didn't work when he fired his guns with the suppressors on.

18.     ROBERTS stated that he owned three Glock pistols: a Glock 43, a Glock 26, and Glock 17. ROBERTS believed that it was his Glock 17 that he had attempted to install the previous device onto. ROBERTS pointed agents to several additional firearms that he owned and kept in his home. ROBERTS stated that he would shoot his guns in the back yard.

19. ROBERTS was told that the devices he received were not replicas, but rather devices that converted Glock pistols into full-automatic firearms. ROBERTS stated that he ordered a lot of things on the Wish app, but most of it wasn't real or was junk, and he didn't believe the devices would function they way they were supposed to.

20. On April 26, 2019, at my request, Agent Sean Krumholz queried the National Firearms and Transfer Record, which is a database maintained and administered by the ATFE. On April 26, 2019, Agent Krumholz advised that ROBERTS is not registered to legally possess any NFA weapons in the National Firearms Registration and Transfer Record.

## CONCLUSION

21. Based on the foregoing, your affiant respectfully submits that there is probable cause to believe that Jonathan ROBERTS committed violations of Title 18, United States Code, Section 922(o) (possession of a machinegun); and Title 26, United States Code, Section 5861(d) (possession of an unregistered NFA firearm).

_____
EDWARD J. WILLIAMS
Special Agent, Homeland Security Investigations

Subscribed and sworn to before me
this __2__ day of May, 2019

_____
HONORABLE JONATHAN W. FELDMAN
UNITED STATES MAGISTRATE JUDGE